UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** : | **CASE NO: 2:25-CR-0020** | |
| : | | |
| Plaintiff, : | | |
| : | | |
| v. : | **CHIEF U.S. MAGISTRATE JUDGE** | |
| : | **DEAVERS** | |
| **FABCON PRECAST, LLC.** : | | |
| : | | |
| Defendant. : | | |

**DEFENDANT FABCON PRECAST, LLC'S SENTENCING MEMORANDUM**

The Defendant, Fabcon Precast, LLC ("Fabcon"), respectfully submits this Sentencing Memorandum to aid this Court in its imposition of an appropriate sentence in this matter.

**I.  PRELIMINARY STATEMENT**

For the reasons set forth below, and as outlined in the Plea Agreement executed by Fabcon on February 10, 2025, undersigned counsel respectfully requests that the Court sentence Fabcon to a $500,000 fine, a $50 special assessment, two years of organizational probation to run concurrently with the December 31, 2024 Stipulation and Settlement Agreement by and between Fabcon and the United States Department of Labor ("OSHA Settlement"), and restitution, noting that Fabcon has already satisfied restitution owed.

**II.  BACKGROUND AND CIRCUMSTANCES**

Fabcon is a manufacturer of concrete precast components used to maximize efficiency, sustainability, and structural integrity of commercial buildings. Fabcon is headquartered in Minnesota, but maintains a manufacturing plant locally in Grove City, Ohio. This matter arises

out of an accident that occurred on June 6, 2020 at Fabcon's Grove City plant, which resulted in the death of a Fabcon employee, Zachary Ledbetter.

The manufacture of concrete precast components includes mixing liquid concrete material using a large, industrial mixer. Once mixed, the concrete is discharged through a pneumatically powered gate into a chute which directs the substance into the appropriate casting machine. An essential step in this process is to ensure that the mixer components remain clean and free of excess concrete build up. Concrete buildup can result in the pneumatically powered discharge gate jamming, which can increase the hazards to Fabcon employees in operating and cleaning the equipment.

Cleaning and maintaining the mixer and its components sometimes requires employees to enter the mixer or discharge chute, which requires the equipment to be locked out on numerous levels. Without proper lockout, the pneumatic energy powering the mixer discharge gate can be unexpectedly released and pose a grave risk to Fabcon employees. Because of this, Fabcon employees must undergo lockout tagout procedure training, among other trainings specific to the safe operation, cleaning and maintenance of the equipment. However, the employees responsible for operating the mixer and cleaning its external components, batch operators, were not expressly authorized to enter the chute for cleaning and, thus, did not undergo the formal training provided to those employees who are authorized to enter the chute.

While Mr. Ledbetter, as a batch operator, did receive some on the job safety training, he did not receive the formal training referred to above, as he was not authorized to enter the chute.[1] At the time of the accident underlying this case, Fabcon policy delineated that when issues arose requiring the unjamming of any equipment, those issues should be redirected to formally trained

---

[1] Fabcon is aware of a manager who had knowledge of Mr. Ledbetter entering the chute. That manager is no longer employed by Fabcon.

maintenance personnel. This included the unjamming of equipment in the mixer and the chute. This policy was reinforced by Fabcon approximately six months prior to the accident underlying this case after an employee injured his hand attempting to unjam another piece of equipment at the plant. Despite this, batch operators continued entering the chute to unjam the pneumatic door, ultimately resulting in the accident involving Mr. Ledbetter. However, the unique circumstances of that accident suggest that Mr. Ledbetter had maneuvered himself higher up into the chute than in other instances Fabcon was aware of, and which significantly increased the risk associated with unexpected movement of the pneumatic gate.

On June 6, 2020, Mr. Ledbetter was the batch operator on the evening shift and he entered the chute to attempt to unjam the pneumatic discharge gate. A co-worker held Mr. Ledbetter's feet while he chiseled away at the concrete buildup causing the jam. However, Mr. Ledbetter did not fully lock out the machine's pneumatic components, and was trapped in the pneumatic discharge gate when it unexpectedly freed from its jam and closed. Fabcon personnel were devastated to learn that the injuries sustained from his accident ultimately resulted in Mr. Ledbetter's death.

Fabcon immediately reported the incident to OSHA and closed its facility so that a thorough investigation could be completed. During the course of OSHA's investigation, Fabcon remained cooperative and promptly corrected all issues identified. Fabcon has even taken additional steps beyond those required by OSHA to ensure the safety of its employees moving forward. For example, although the mixer involved in the incident remained in working order, Fabcon replaced it with a new system that has integrated safety mechanisms designed to eliminate the potential for a similar incident to occur in the future. Moreover, Fabcon's Director of Environment, Health, Safety, and Risk Management, who was already in the process of

3

implementing a company-wide safety protocol to ensure consistency in application and enforcement among Fabcon's manufacturing plants and jobsites conducted a full review of the mixer lockout/tagout processes at all of Fabcon's plants. He also implemented additional audits and continued to refine those processes, including adding a requirement of management sign-off on each entry into a mixer company-wide.

All of Mr. Ledbetter's coworkers and supervisors agree that he was a hard worker and a great friend to those around him. His death took a significant toll on the employees at Fabcon's Grove City plant, and Fabcon's leadership are deeply remorseful for the events that unfolded on June 6, 2020. Recognizing that it cannot erase history, the Fabcon team is doing everything in its power to protect its employees to the fullest extent moving forward.

### III. APPLYING THE ADVISORY FEDERAL SENTENCING GUIDELINES AND THE RELEVANT FACTORS UNDER 18 U.S.C. § 3553(a) IN THIS CASE

#### A. Legal Standard

Per the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are no longer binding on the Court. The Guidelines are merely a "starting point and the initial benchmark" in the Court's search for an appropriate sentence." *Gall v. United States*, 552 U.S. 38 (2007). Rather, the Supreme Court has held that *Booker* "contains an overarching provision instructing District Courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. United* States, 128 S. Ct. 570 (2008). This sufficiency standard is achieved through application of the standards set forth under 18 U.S.C. § 3553(a). Moreover, in the case at bar, the Court must consider the mandate of 18 U.S.C. § 3572 in determining and imposing the appropriate fine. U.S.S.G. § 8C2.10.

### B. Guideline and Statutory Factors

In this case, the applicable Sentencing Guidelines and statutory provisions prescribe a maximum fine of $500,000 plus a mandatory special assessment fee of $50. 18 U.S.C. §§ 3013, 3553, 3571(c)(4), and 3572; U.S.S.G. § 8C2.10. In addition to the possible financial penalties, Fabcon may be sentenced to a term of organizational probation not to exceed five years. 18 U.S.C. §§ 3561(a) and (c)(2); U.S.S.G. § 8D1.2(a)(2).

### C. Application

Because Fabcon and the Government have agreed that the maximum available fine is appropriate, a thorough review of the pertinent U.S.C. § 3572 factors is not warranted here. However, the relevant 18 U.S.C §3553(a) factors include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; and "(2) the need for the sentence imposed."

#### i. Nature and Circumstances of the Offense

Fabcon recognizes that ,in light of the risks associated with its industry, the seriousness of failing to comply with applicable OSHA standards is clear. Nevertheless, it is important to recall that this tragedy, while avoidable, was the result of an accident. Fabcon never intended to bely the value of Mr. Ledbetter's life by purposely placing him in harm's way, and its leaders will live with this tragedy on their consciences indefinitely.

#### ii. Need for Sentence Imposed

Fabcon has taken profound steps to improve its safety protocols and working conditions in the wake of this tragedy. As discussed above, Fabcon has done everything asked of it and more to ensure this never happens again. Moreover, Fabcon has covered the costs of Mr.

Ledbetter's funeral and provided a substantial sum in monetary compensation to his family in settlement of their loss.

Furthermore, Fabcon is already operating under the Safety Compliance Plan accompanying its plea in this matter, as that same Safety Compliance Plan was also attached to Fabcon's December 31, 2024 Stipulation and Settlement with the Department of Labor ("OSHA Settlement"). While Fabcon was already in compliance with most of the terms in the Safety Compliance Plan before it went into effect, it has taken additional steps since the OSHA Settlement to ensure full compliance moving forward. Fabcon's manufacturing plants feature updated, safer equipment, and Fabcon has a dedicated officer in place to ensure no measure of workplace safety falls through the cracks. Because Fabcon has taken these preventative measures, a lengthy term of probation is unnecessary to ensure their compliance with applicable safety protocols. Furthermore, they have satisfied restitution to Mr. Ledbetter's family, removing the need for a term of probation to ensure such payments are made.

IV. **CONCLUSION**

The sentence agreed upon in Fabcon's plea agreement would serve as both a specific and general deterrent of future crime – accomplishing the principles and purposes of sentencing – without demeaning the seriousness of the offense. Thus, Counsel respectfully requests that this Court abide by that plea agreement and sentence Fabcon to a $500,000 fine plus a $50 special assessment and two-years of organizational probation. Fabcon further requests that the probation date run from the date of the OSHA Settlement.

Respectfully submitted,

*/s/ David DeVillers*
David DeVillers (59456)
Barnes &Thornburg LLP
41 S. High Street Suite 3300
Columbus, OH 43215-6104
Telephone: 614-628-1446
Email: ddevillers@btlaw.com

Mark C. Collins
Collins & Stephens Co., LPA
150 E. Mound St., Suite 308
Columbus, OH 43215
Telephone: 614-443-3100
Email: mark@mcollinslaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing document has been served on all counsel of record via the Court's ECF filing system this 27th day of May, 2025.

*/s/ David DeVillers*
David DeVillers